UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ALBERTA GOODMAN

VERSUS

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY, ET AL.

CIVIL ACTION

NO. 19-229-SDD-EWD

**NOTICE AND ORDER**

On January 18, 2017, plaintiff, Alberta Goodman ("Plaintiff") filed a Petition for Damages against Nationwide Agribusiness Insurance Company ("Nationwide"), AG Logistics, LLC ("AG Logistics"), and Telly Georgetown ("Georgetown") for damages allegedly sustained in a January 20, 2016 automobile accident.[1] On March 22, 2019, Plaintiff filed a First Supplemental and Amended Petition for Damages (the "Amended Petition") adding James River Insurance Company ("James River") as a defendant.[2] Thereafter, on February 19, 2019, Plaintiff entered into a "*Gasquet* Partial Settlement Agreement and Receipt and Release" (the "Partial Settlement") with AG Logistics, Georgetown, and Nationwide.[3] On April 18, 2019, James River filed a Notice of Removal pursuant to 28 U.S.C. § 1332.[4]

For the reasons set forth herein, the court *sua sponte* raises the issue of whether it may exercise diversity jurisdiction in this matter.

With respect to the amount in controversy, Plaintiff alleges that she "sustained severe and disabling injuries" including severe headaches; blurred vision; neck, back, leg, and arm pain; and

---

[1] R. Doc. 1-1.

[2] R. Doc. 1-2.

[3] R. Doc. 1-3.

[4] R. Doc. 1.

1

general soreness to her whole body.[5]  Plaintiff seeks to recover for property damage as well as past, present, and future physical pain and suffering; mental pain, anguish and distress; loss of enjoyment of life; lost wages; disability; impairment of earning capacity; and medical expenses.[6]

Per its Notice of Removal, James River asserts that although Plaintiff settled her claims against Nationwide, Georgetown, and AG Logistics for $925,000.00, Plaintiff's medical records support James River's position that the amount in controversy requirement is met.[7]  Specifically, James River explains that Plaintiff underwent a lumbar medial branch block and bilateral radiofrequency ablation prior to the Partial Settlement, that "[d]iagnostics (sic) studies reveal multiple disc bulges and an associated annular tear," and that Plaintiff's "surgeon has recommended spinal cord stimulation as an alternative to surgery."[8]  Despite reference to Plaintiff's medical records and treatment, there is no indication in the Notice of Removal as to Plaintiff's medical expenses, nor is there any information regarding Plaintiff's lost wages, property damage, or alleged disability.  Significantly, other than citing one Louisiana district court judgment,[9] James River does not explain how the amount in controversy exceeds the jurisdictional threshold here considering the amounts already paid under the Partial Settlement.[10]  Based on the

---

[5] R. Doc. 1-2, ¶ 6.

[6] R. Doc. 1-2, ¶ 7.

[7] R. Doc. 1, ¶ 21.

[8] *Id*.

[9] James River cites the Judgment entered in *McAdams v. Mack, et al.*, No. C-644,205, 2018 WL 7133846 (Sept. 21, 2018).  There, following a bench trial, plaintiff was awarded a total of $3,705,244.50 in damages which included past medical expenses of $112,610.50, future medical expenses of $792,035.00, future lost wages of $707,430.00, as well as damages for loss of retirement and loss of health insurance.  There is no indication that Plaintiff's damages or losses are sufficiently similar to those in *McAdams* to justify basing the amount in controversy on the result in that case.

[10] *See e.g.*, *Koester v. State Farm Ins. Co.*, No. 7:12-cv-02528, 2012 WL 5265783, at *5 (N.D. Ala. Oct. 22, 2012) ("As would seem self-evident, when an insurer makes pre-suit payments towards an insured's claim, such amounts are not "in controversy" and thus are not included when determining whether the jurisdictional threshold has been met."); *State Farm Mut. Auto Ins. Co. v. Powell*, 87 F.3d 93, 97 (3rd Cir. 1996) (amount in controversy not met where insurer "never denied" that it was obligated to pay insured "at least" $50,000.00 and filed a declaratory judgment action seeking a declaration it was only obliged to pay that amount, "[t]hus, from the outset of this litigation State Farm conceded that it owed Powell $50,000; it merely sought to limit its obligation to that figure out of his alleged

information contained in the Amended Petition and the Notice of Removal, the court *sua sponte* raises the issue of whether it may exercise diversity jurisdiction in this matter, specifically, whether the amount in controversy requirement has been met.[11]

With respect to the citizenship of the parties, James River alleges that Plaintiff is a Louisiana citizen and James River is an Ohio corporation with its principal place of business in Virginia.[12] Nationwide is alleged to be an Iowa corporation with its principal place of business in Iowa, while both Georgetown and AG Logistics are alleged to be Louisiana citizens.[13] Although James River recognizes that Plaintiff, Georgetown, and AG Logistics are not diverse from one another, James River contends that Plaintiff voluntarily terminated her claims against Nationwide, Georgetown, and AG Logistics *via* the Partial Settlement and that the citizenship of these nominal defendants should be disregarded.[14]

"In determining diversity jurisdiction, 'a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'"[15] In the Fifth Circuit, "'a case may be removed based on any voluntary act of the plaintiff that effectively

---

$100,000 in underinsured motorist coverage."); *Hamilton v. Liberty Mut. Fire Ins. Co.*, No. C06-5174, 2006 WL 1423466, * 1 (W.D. Wash. May, 23, 2006) (amount in controversy was the difference between the damage allegedly suffered and the amount already paid by insurer); *Gucciardo v. Reliance Ins. Co.*, 84 F.Supp.2d 399, 403 (E.D.N.Y. 2000) ("From the $55,000 demand, however, the Court must deduct the $21,733 already paid by Reliance on the policy."); 16 Couch on Ins. § 229:49 (3d ed.) ("Since the insurer, by making a tender, admits that the amount thereof is not in controversy, it follows that the amount of the tender is to be deducted from the plaintiff's claim in determining the amount in controversy.").

[11] *See*, *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) ("the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.");

[12] R. Doc. 1, ¶¶ 7-8.

[13] R. Doc. 1, ¶¶ 10-12.

[14] R. Doc. 1, ¶¶ 6, 9-16.

[15] *Bynane v. Bank of New York Mellon for CWMBS, Incorporated Asset-Back Certificates Series 2006-24*, 866 F.3d 351, 356 (5th Cir. 2017) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)).

3

eliminates the nondiverse defendant from the case.'"[16] Where a plaintiff has "effectively eliminated" the nondiverse defendant(s) *via* a settlement, the case becomes removable.[17] Here, James River contends that the Partial Settlement renders Nationwide, Georgetown, and AG Logistics nominal defendants whose citizenship may be disregarded for purposes of determining diversity jurisdiction.[18]

**IT IS HEREBY ORDERED** that on or before **May 10, 2019**, James River Insurance Company shall file a memorandum and supporting evidence concerning whether the amount in controversy requirement of 28 U.S.C. § 1332 is met.

**IT IS FURTHER ORDERED** that on or before **May 24, 2019**, Plaintiff shall file either: (1) a Notice stating that Plaintiff does not dispute that James River has established the jurisdictional requirements of 28 U.S.C. § 1332; or (2) a Motion to Remand.

The case will be allowed to proceed if jurisdiction is adequately established.

.

---

[16] *Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 911 (5th Cir. 2000) (quoting *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 693 (5th Cir. 1995)).

[17] *Martineau*, 203 F.3d at 912 (holding, in light of a binding and enforceable settlement agreement, that plaintiff "intended to abandon litigation against Sweeney, and he effectively eliminated the nondiverse defendant."); *Hargrove v. Bridgestone/Firestone North American Tire, LLC*, 10-cv-0318, 2012 WL 692410, at * 3-4 (W.D. La. March 2, 2012) ("Where, as here, there is a voluntary action by the plaintiff, i.e., the execution of settlement documents showing no intention of proceeding against those particular defendants, the case becomes removable" and further noting "the fact that the judgment of dismissal had not been signed by the State court is of no consequence – what matters is that there was an 'expression of intent by plaintiff which makes the case removable.'") (internal citation omitted); *Landry v. Eagle, Inc.*, Civil Action No. 12-1022, 2012 WL 2338736, at * 3 (E.D. La. June 19, 2012) ("Settlement by a plaintiff with all nondiverse defendants has been held to render a case removable, provided the settlement is irrevocable, binding, and enforceable under state law.").

[18] The Partial Settlement purports to be a *Gasquet* release. As explained by one court, "Louisiana lawyers use "*Gasquet*" as a term of art to denote a type of release in which a plaintiff settles with and release a defendant insured and its primary insurer, but reserves his or her right to pursue additional amounts available through the insured's excess insurance policy." *RSUI Indemnity Co. v. American States Ins. Co.*, 127 F.Supp.3d 649, 657 (E.D. La. 2015). "Procedurally, after a *Gasquet* release is executed the insured remains in the lawsuit as a 'nominal' defendant while the plaintiff pursues recovery from the excess insurer." *Id*. *See also*, *Jones v. Travelers Indem. Co.*, No. 6:18-cv-946, 2018 WL 6684584, at * 3 (W.D. La. Dec. 19, 2018) (discussing *Gasquet* release and noting "[h]ad the Court allowed Rose [who was released *via* a partial *Gasquet* release] to be named as a party defendant (nominal defendant) diversity jurisdiction would remain.").

Signed in Baton Rouge, Louisiana, on April 26, 2019.

                                              **ERIN WILDER-DOOMES**
                                              **UNITED STATES MAGISTRATE JUDGE**